Ruby Rose LEDET, et al.,

v.

George FISCHER.

No. 82–16–A.

United States District Court,
M.D. Louisiana.

July 21, 1986.

---

Henry C. Remm, Jr., Lafayette, La., for plaintiff.

Sidney W. Hall, Jerry H. Bankston, Baton Rouge, La., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

This matter is before the court for decision after trial on the merits. The court has jurisdiction under 28 U.S.C. § 1331 and § 1343(3) and (4).

Plaintiff, a Medicaid eligible disabled widow and recipient of Supplemental Security Income who is in need of eyeglasses, filed this action for class certification and preliminary and permanent injunction. The present Louisiana Public Assistance Manual, sections 19–490 through 19–492 limits the provision of eyeglasses to post-cataract surgery patients. Plaintiff is not a post-cataract surgery patient. Plaintiff claims that this limitation is a violation of federal statutes and regulations and is a violation of her constitutional rights.

This action has already been heard on plaintiff's motion for preliminary injunction, see *Ledet v. Fischer*, 548 F.Supp. 775 (M.D.La.1982). The court concluded that there was little likelihood that the plaintiff would succeed on the merits, and denied the request for the preliminary injunction. The plaintiff originally asserted two grounds on which she claims that Louisiana regulations conflict with federal law and regulations: violation of 42 CFR § 440.-230(c) which prohibits reducing the amount, duration, or scope of a required service solely because of diagnosis, types of illness or condition and violation of 42 C.F.R. § 440.230(b) which requires that the plan be sufficient in amount, duration, and scope to reasonably achieve its purpose. Subsequent to the denial of the preliminary injunction, the plaintiff amended her complaint to delete the first assertion, that of the violation of 42 C.F.R. § 440.230(c). This court held on the preliminary injunction that § 230(c) by its express terms applies only to a required service, which the eyeglass service is not.

On September 18, 1985, the plaintiff class was modified so as to include:

> ... all present and future categorically needy Medicaid recipients in Louisiana, who are not eligible for the Early Periodic Screening, Diagnosis Treatment program, or for the Louisiana program providing for one pair of permanent cataract glasses or contact lenses following cataract surgery only, who are or will be in need of eyeglasses, and who have been denied or will be denied eyeglasses because of the restrictive rules and practices which authorize vendor reimbursement only for cataract glasses or contact

lenses customarily used following cataract surgery.

As a condition of receipt of federal matching funds under the federal Medicaid program, states must conform their policies, practices, and regulations to the Social Security Act and the federal regulations relating to the Medicaid eligibility and services. 42 U.S.C. § 1396. The Act and regulations establish six services that are required to be provided by the states. 42 U.S.C. § 1396a(10). Additional services are authorized but are considered optional. The furnishing of eyeglasses is an optional service. 42 U.S.C. § 1396d(a)(12).

Plaintiff's principal argument is that the Louisiana program violates 42 CFR § 440.230(b)'s requirement that the plan be sufficient in amount, duration, and scope to reasonably achieve its purpose. 42 CFR § 440.230 reads in full as follows:

(a) The plan must specify the amount, duration, and scope of each service that it provides for—

(1) The categorically needy; and

(2) Each covered group of medically needy.

(b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.

(c) The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service under § 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.

(d) The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures. (1981)

As is set forth in detail in the court's findings on the motion for preliminary injunction, all of which are adopted here, the Louisiana plan provides only "one pair of permanent cataract glasses following cataract surgery." Louisiana Plan, Attachment 3.1–A Item 12d. The federal regulations define "eyeglasses" as "lenses, including frames, and other aids to vision prescribed by a physician skilled in diseases of the eye or an optometrist." 42 CFR § 440.120(d) (1985).

The tension presented by this case then is between Louisiana's limitation of its service and the federal requirement that the service, including optional services, "must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 CFR § 440.230(b), supra. The plaintiff class argues that eyeglasses are furnished to aid or improve vision and that the Louisiana plan discriminates against persons with refractive or other vision problems who have not had cataract surgery but have impaired vision. The defendants argue that the state's service is sufficient in amount, duration and scope since its purpose is limited to providing a replacement lens for those who have had cataract surgery. The defendants also argue that the restriction to cataract surgery patients is an appropriate limit on the service based on medical necessity which is permitted by § 440.230(d), supra.

■ Plaintiff's argument hinges on the interpretation of the word "purpose" in § 440.230(b). Plaintiff argues that the purpose is to aid or improve vision.[1] Her authority for this proposition is a prior version of the regulation, 42 C.F.R. § 449.10(b)(12)(iv) (1977), which provided for eyeglasses "to aid or improve vision." When this version was changed and the quoted language was dropped, the Department of Health and Human Services stated that no substantive change in the regulation was intended. 43 Fed.Reg. 45176, 45224 (1978).

---

**1.** This definition of purpose necessarily assumes that the Louisiana provision of post-cataract glasses is part of an eyeglass program. There was some evidence at trial tending to establish the provision of post-cataract glasses as a prosthetic device. This court asked both parties to brief whether providing post-cataract glasses is a part of an eyeglass program or a prosthetic device program, and, if the latter, what effect such a classification would have on the plaintiff's argument. The defendant did not brief this point, but instead argued that the Louisiana program is a reasonable limitation of the purpose behind the eyeglass program. Thus this court deems any argument that the post-cataract glasses are prosthetic devices is waived.

▮ In ruling on the motion for preliminary injunction, this court held that the purpose of the Louisiana program was "to improve the vision of cataract surgery patients." p. 787. If that were so, the Louisiana program definitely would be sufficient in amount, duration, and scope to reasonably achieve that purpose. The plaintiff argues that a state cannot define its own purpose for a service, but, once it decides to furnish an optional service, must provide that service under the guidelines of the federally-declared purpose. The defendant does not rebut this argument by plaintiff, but instead argues the alleged right of the state to limit a service based on medical necessity and on the alleged right of the state to define "medical necessity" within reasonable limits. Upon further consideration, the court concludes that the original conclusion regarding "purpose" was in error. The states are not free to define "purpose" without regard to federal requirements. Therefore, for the purposes of this decision, this court will assume the purpose of the optional eyeglass program under federal regulations is "to aid or improve vision."

▮ It is clear, as the defendant seems to argue, that a state may limit its service based on medical necessity. 42 CFR § 440.230(d). *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977), (which held that the states were not required to provide non-therapeutic abortions under Title XIX of the Social Security Act.) Indeed, the plaintiff class here concedes that Louisiana could under federal regulations limit the eyeglass program to those otherwise eligible persons whose vision is the worst. It is not absolutely clear, however, that this is what Louisiana has done. At trial, an ophthalmologist, Dr. Larry E. Baker, testified that after surgical removal of the lens, the cataract patient cannot see at all but that a very small group of persons with very bad refractive errors could have just as much medical need for glasses as post-cataract surgery patients:

"Q. Would some of those people—Could some of those people who do not have insulin-dependent diabetes need glasses just as much, in your opinion, as a post-cataract surgery individual?

A. Some of the people would need them as much. What I'm trying to point out is that the post-cataract patients need them the worse, essentially, *unless they have a very bad refractive error.* But they—that does not mean they don't need them. If you are asking me do they need them as much, then I would say *there are very few who need them as much as that group;* that group would need them the most; but then, on a graduated level, you will have all kinds of people who need them to a greater or lesser degree from that point on down."

(Trial testimony of Dr. Larry E. Baker, page 17. Emphasis added.)

A sister district court dealt with a state program supplying eyeglasses on the same basis that Louisiana does: only to post-cataract surgery patients. *Simpson v. Wilson,* 480 F.Supp. 97 (D.Vt.1979). That court found that the state could not claim that its choice to supply glasses only to post-cataract patients was purely by medical necessity since evidence presented at that trial showed that some persons with refractive problems were as blind as persons after cataract surgery. However, that court held for plaintiff on other grounds, an argument under 42 C.F.R. § 440.230(c), which argument in the instant case has already been dismissed.

That there may be other persons that have a medical need for eyeglasses as great as the need of post-cataract surgery patients does not conclude this case in favor of plaintiff.

The state also argues that it has the right to define "medical necessity" within reasonable limits and that limiting its finding of medical necessity for eyeglasses to post-cataract surgery patients is reasonable. The Fifth Circuit case of *Rush v. Parham,* 625 F.2d 1150 (5th Cir.1980), indicates that the states have some input in defining medical necessity as long as the definition is reasonable. In that case, the

court found it reasonable to exclude experimental treatment as medically unnecessary, even if the plaintiff's physician testifies that the surgery was medically necessary in her case. The case was remanded for the state to show that transsexual surgery was indeed experimental.

Two other cases show the Supreme Court's willingness to accept general definitions or formulas for determining benefits under the Social Security Act because of the limited resources under the program and the cost and expense of individual determinations. In *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981), the court dealt with a formula that attributed a portion of a spouse's income as available to the claimant. Eligibility under the Act depended on the income and resources available to an applicant. The court found that the administration of public assistance based on the use of a formula was not inherently arbitrary. There were limited resources to spend on welfare and requiring an individual determination of need would dissipate these resources that otherwise could be spent on the needy. In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the court approved a formula denying social security benefits to surviving wives and stepchildren if the marriage had occurred less than nine months prior to the death of the spouse. The district court had found that the purpose of the formula was to prevent the use of sham marriages to get the social security benefits, but was an irrebutable presumption, so invalid. The Supreme Court said that the proper question was whether the Congress could rationally conclude that a qualification would protect against the danger desired to be avoided and that the expense and other difficulties of individual determinations justified the inherent imprecision of a formula.

In *Curtis v. Taylor*, 625 F.2d 645 (5th Cir.1980), Florida, for fiscal reasons, limited the required service of reimbursing for physician visits to three visits per month. The court cited 42 C.F.R. § 230(b) and declared the purpose to be going to the physician's office, but did not discuss whether it was a state or federal determination of purpose. The court cited *White v. Beal*, 555 F.2d 1146 (3d Cir.1977), but said that was inapplicable because that court prohibited the denial of services based on diagnosis, type of illness, or condition. Florida's limitation was not based on those grounds. The evidence showed that most Medicaid recipients did not need more than three visits per month, so the limitation satisfied the purpose.

Two cases cited by plaintiff for the proposition that courts will invalidate state attempts to define the purpose narrowly to meet only a very small portion of the Medicaid population really only imply reference to a federal purpose. The cases mainly emphasize that the needs of most of the recipients must be met. In *Charleston Memorial Hosp. v. Conrad*, 693 F.2d 324 (4th Cir.1982), the defendant, for fiscal reasons, reduced the number of days the state would cover in-hospital care. The reduced coverage still met federal guidelines, since the facts showed that the number of days still covered were sufficient to meet 230(b) since it met the medical needs of most recipients. In *Virginia Hospital Association v. Kenley*, 427 F.Supp. 781 (E.D.Va. 1977), the plaintiff contested the state's reduction to 21 days in coverage for in-patient hospital care. The reduction was valid as long as it reasonably achieved the purpose of the service. The court discussed whether the plan must reasonably achieve the purpose for each individual or for the Medicaid population as a whole. The Department of Health, Education, and Welfare interpreted it as the latter. The evidence indicated that 92% of the Medicaid population spent only 21 days in the hospital and the court concluded that the limitation reasonably achieved the purpose of the service.

The above cases lend some support to the argument that the state may define "medical necessity" for the eyeglass program to include only post-cataract surgery patients. The evidence indicates that there are only a very few people with refractive problems who cannot see at all, as is the case with

post-cataract surgery patients. Thus, it can be logically argued that Louisiana's program reaches most of the most medically needy—those who cannot see at all but will be able to see with cataract glasses or lens—and that it represents an appropriate limit based on medical necessity.

On the other hand, if the purpose of the federal eyeglass program is to aid or improve vision, it is apparent that there are some people, miniscule though their number may be, who are just as much in medical need as post-cataract surgery patients who are excluded from the program entirely. In each of the cases discussed above, all of the targeted needy groups had equal access to the service. In *Rush v. Parham,* supra, it was reasonable to exclude all experimental surgery, including transsexual. In *Schweiker v. Gray Panthers,* supra, it was reasonable to attribute a portion of the income of *all* spouses having income to the applicant. In *Weinberger v. Salfi,* supra, it was reasonable to deny benefits to *all* surviving spouses and stepchildren where the marriage had not occurred at least nine months prior to death. In *Curtis v. Taylor,* supra, it was reasonable to limit physician's visits, a required service, to three per month for *all* persons in the program. In *Charleston Memorial Hosp. v. Conrad,* supra, and *Virginia Hospital Association v. Kenley,* supra, it was reasonable to reduce the number of covered in-hospital days for *all* applicants.

Under Louisiana's program, however, all persons having the same medical need—the inability to see—do not have equal access to the service. As we have noted, it would be within federal standards for Louisiana to limit eyeglass services in any number of ways, including medical necessity but here the limitation is not based totally on medical necessity.

The court concludes that the Louisiana service conflicts with 42 C.F.R. § 440.-230(b) because it is not sufficient in amount, duration and scope to reasonably achieve its purpose, to improve or aid vision, and all findings or statements which might be to the contrary in the decision on the motion for preliminary injunction are vacated and recalled.

█ The court also concludes that the Louisiana limitation, furnishing eyeglasses only to post-cataract patients, is not an appropriate limitation based on medical necessity under 42 C.F.R. § 440.230(d). The state has neither argued nor offered evidence to show that it would be cost prohibitive to identify the very small number of people who also cannot see but for other reasons. Accordingly, the limitation is not based on "medical necessity or on utilization control procedures." Id.

Because this is an optional service, the state need not provide it at all. If it chooses to provide it, the state may certainly limit it in many ways—to those most medically needy or by cost or number of pairs of glasses provided but here it has not done so.

Accordingly, there will be permanent injunctive relief in favor of the plaintiff class. Counsel for plaintiff shall prepare a draft of a judgment and submit it to opposing counsel for approval. Counsel for plaintiff shall also submit the information required to fix attorney's fees to the prevailing party under 42 U.S.C. § 1988.