ASH, Conservator, Appellant,

v.

**OHIO DEPARTMENT OF HUMAN SERVICES, Appellee.**

[Cite as *Ash v. Ohio Dept. of Human Serv.* (1998), 126 Ohio App.3d 211.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 97 CA 3.

Decided Feb. 13, 1998.

212

*Martin, Pergram & Browning Co., L.P.A., William J. Browning* and *Dennis L. Pergram,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Margaret E. Adams,* Assistant Attorney General, for appellee.

KLINE, Judge.

Dr. Clarence Ash appeals the decision of the Washington County Common Pleas Court affirming the Ohio Department of Human Services' ("ODHS") determination of the amount of benefits available to Jeffrey Ash under the Medically Fragile Waiver Program ("MFWP"). Ash argues that the court erred because the ODHS's decision is not supported by reliable, probative and substantial evidence, and is arbitrary, capricious, unreasonable, a gross abuse of discretion, and contrary to law. We disagree because we find that the state's monetary cap is reasonable and in accordance with the Social Security Act of 1965. Accordingly, we affirm the decision of the trial court.

I

In 1991, Jeffrey Ash ("Jeffrey") suffered a brain stem stroke, which eliminated his control over all of his bodily functions except for the movement of his eyes. His condition requires that all of his vital functions be constantly monitored and

artificially supported. Jeffrey requires a tracheotomy tube in his throat, suctioned approximately every ten minutes, to prevent saliva from seeping into his lungs.

For eleven months following his stroke, Jeffrey was transported to a series of hospitals and rehabilitation units in Ohio, Pennsylvania, and Wisconsin. None of the facilities could suction Jeffrey's tracheotomy often enough to prevent saliva from collecting in his lungs and causing serious infections. As a result, Jeffrey spent time in intensive care approximately every other month. Jeffrey's medical bills averaged $67,000 per month.

After eleven months, Jeffrey's father, Clarence Ash, M.D. ("Ash"), and Jeffrey's brother, Robert Ash, M.D., decided that Jeffrey should receive care in his own home with Ash supervising his care. From 1992 until the present, Jeffrey has received twenty-four-hour care in his home. He has been hospitalized only four times since 1992. The costs of his care dropped to $22,000 per month.

In June 1994, Jeffrey's health care costs exceeded the $1.2 million benefit cap on his health insurance policy. In June 1995, Ash, on Jeffrey's behalf, applied for enrollment in the Medicaid MFWP through the Washington County Department of Human Services ("WCDHS"). The WCDHS approved Jeffrey for the MFWP, awarding him the maximum amount of services allowed under the program, $9,000 per month.

Ash appealed the decision and requested a state hearing, arguing that the state hearing board should grant Jeffrey services over the cost cap. The state hearing board overruled Ash's appeal.

Ash appealed to the Ohio Department of Human Services. In affirming the state hearing decision, the ODHS found that Jeffrey was enrolled in the MFWP only because ODHS was assured that additional cost for the nursing hours above the $9,000 cap would be provided by Jeffrey's family to meet his needs. Absent those assurances, Jeffrey would not have been enrolled in the MFWP. Ash appealed to the Washington County Common Pleas Court which affirmed the administrative appeal decision. Ash appeals that decision, asserting the following assignment of error:

"The common pleas court committed prejudicial error by not reversing the decision of the administrative agency as said decision is not supported by reliable, probative and substantial evidence, and is arbitrary, capricious, unreasonable, a gross abuse of discretion, and contrary to law."

II

■ In his sole assignment of error, Ash contends that Ohio Adm.Code 5101:3–39–02 is unreasonable and inconsistent with the Social Security Act of 1965

because the cost cap on MFWPs is not in Jeffrey's best interest and is administratively inefficient. See Section 1396 *et seq.*, Title 42, U.S.Code. Specifically, Ash reasons that home care is healthier for Jeffrey and the state will spend less money if Jeffrey receives $22,000 to adequately provide for his home care, and does not need to enter the hospital at a cost of approximately $67,000.

### A

Under R.C. 119.12, a common pleas court may affirm an administrative agency's determination if it is "supported by reliable, probative, and substantial evidence and is in accordance with law." To the extent that an agency's decision is based upon the construction of the state or federal Constitution, a statute, or case law, an appellate court reviews the common pleas decision *de novo*. *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 613 N.E.2d 591; *Moran v. Ohio Dept. of Commerce* (1996), 109 Ohio App.3d 494, 672 N.E.2d 699. See, also, *Amisub (PSL), Inc. v. Colorado Dept. of Social Servs.* (C.A.10, 1989), 879 F.2d 789, 795. We do not give the same deference to the ODHS's interpretation of the federal Social Security Act's requirements that we would to a federal agency's interpretation. *Turner v. Perales* (C.A.2, 1989), 869 F.2d 140, 141; *DeLuca v. Hammons* (S.D.N.Y.1996), 927 F.Supp. 132, 133.

### B

Title XIX of the Social Security Act of 1965, Section 1396 *et seq.*, Title 42, U.S. Code ("the Medicaid Act"), establishes a joint federal-state funding program that provides medical assistance to persons whose income and resources are insufficient to meet the costs of medical care. *DeLuca v. Hammons* (S.D.N.Y.1996), 927 F.Supp. 132, 133. Ohio elected to participate in the Medicaid program and chose to provide a home- and community-based service, known as the MFWP, as an alternative to institutionalization in a hospital or other care facility. R.C. 5111.02; 5111.85; Ohio Adm.Code 5101:3–39–01.

In order to receive the federal government subsidies for its programs, including the MFWP, Ohio must submit its plan of care to the Secretary of Health and Human Services for approval and comply with all federal statutory and regulatory requirements. Section 1396n(c), Title 42, U.S.Code; Section 1396a(A)(10)(A)(ii)(VI), Title 42, U.S.Code. Ohio's MFWP plan includes a cost cap provision under Ohio Adm.Code 5101:3–39–02, which provides:

"The monthly cost cap equals the sum of B (annual capita cost for institutional care) and B' (annual per capita cost for acute care services) for those who meet the HCBS eligibility criteria identified in this rule but who are not enrolled in the HCBS waiver program, divided by an average length of stay of eight months. The quotient is multiplied by an inflation factor of 1.125.

"Cost cap=[ (B + B')/8 months] X 1.125

"Cost caps are determined at the beginning of each waiver year and use the B and B' values on the most recent HCFA 372 'Annual Report On Home and Community–Based Service Waivers,' or the waiver proposal itself if no HCFA 372 is available."

The current cost cap for the MFWP, as determined by the rule, is approximately $9,000 per month.

Federal guidelines require that Ohio's plan must (1) protect the health and welfare of beneficiaries of the MFWP and to assure financial accountability for funds spent for the services; (2) assure that eligibility for a MFWP will be determined in a manner consistent with simplicity of administration and the best interest of the recipients; and (3) structure funding so that the average per capita expenditure estimated in any fiscal year for medical assistance for MFWP recipients does not exceed the average per capita expenditure that would have been made to MFWP recipients in that fiscal year if the MFWP recipients were in an institutional setting. Sections 1396n(c)(2)(A), 1396a(a)(19), and 1396n(c)(2)(D), Title 42, U.S.Code; Section 441.303(f)(1), Title 42, C.F.R.

These provisions apply only to medical assistance that Ohio chooses to provide under its state plan and do not mandate the extent of coverage the state must include in its plan. *Curtis v. Taylor* (C.A.5, 1980), 625 F.2d 645, modified on other grounds, 648 F.2d 946; *Virginia Hosp. Assn. v. Kenley* (E.D.Vir.1977), 427 F.Supp. 781. Ohio, in choosing what services to cover in its plan, may provide payment for "part or all of the cost of home care." Section 1396n(c) and 1396a(a)(10)(A)(ii)(VI), Title 42, U.S.Code. Ohio retains substantial discretion to choose the proper mix of amount, scope, and duration limitations on Medicaid coverage as long as its provisions are reasonable and consistent with the objectives of the Social Security Act of 1965. Section 1396a, Title 42, U.S.Code; *Alexander v. Choate* (1985), 469 U.S. 287, 289, 105 S.Ct. 712, 714, 83 L.Ed.2d 661, 664, fn. 1; *DeLuca v. Hammons*, 927 F.Supp. at 133.

The MFWP must be sufficient in amount, duration, and scope to reasonably achieve the purpose of the state plan. Section 440.230(b), Title 42, C.F.R. Within its plan, Ohio may place appropriate limits on the MWFP based upon such criteria as medical necessity or utilization control procedures. Section 440.230(d), Title 42, C.F.R. A service is sufficient in amount, duration, and scope if it adequately meets the needs of *most* individuals eligible for Medicaid service to pay for that service. *King v. Sullivan* (D.R.I.1991), 776 F.Supp. 645, 653.

Ohio is not charged with assuring that the needs of each eligible applicant are met in full, only fulfilling the requirements of its own state plan. *Id.* The United States Supreme Court explained the requirements as following:

"Medicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs. Instead, the benefit provided through Medicaid is a particular package of health care services * * *. That package of services has the general aim of assuring that individuals will receive necessary medical care, but the benefit provided remains the individual services offered—not 'adequate health care.' " *Alexander v. Choate*, 469 U.S. at 303, 105 S.Ct. at 721, 83 L.Ed.2d at 673.

## C

Ash asserts that the ODHS's cost cap of $9,000 on the MWFP, as applied to Jeffrey, is unreasonable and inconsistent with Section 1396a(a)(19) of the Social Security Act of 1965 because a cost cap is not in Jeffrey's best interest and is administratively inefficient. Section 1396a(a)(19), Title 42, U.S.Code. Ash argues that once he is unable to pay the residual fees for Jeffrey's care, Jeffrey will be hospitalized at a cost approximately three times the cost of caring for him at home. The increased costs will probably be covered by Medicare, at a greater burden to taxpayers than his current care. Furthermore, previous medical records indicate that Jeffrey's hospitalization will threaten his health because of the inability of institutional facilities to care for him. As a remedy, Ash urges this court to reverse the decision of the trial court and grant Jeffrey benefits in excess of the $9,000 cost cap.

■ Although we sympathize with Ash's position, we are not in a position to invalidate an administrative regulation, which has the force of law, relying solely on the exceptional circumstances of this case.[1] Whether the trial court erred in affirming the decision of ODHS does not depend on whether the cost cap on the MFWP provides sufficient services for Jeffrey alone. Rather, the validity of the cost cap depends upon whether Ohio provides MFWP services that, for most eligible persons, reasonably meet the standards set forth in its state plan. See *King v. Sullivan*, 776 F.Supp. 645; *Virginia Hosp. Assn.*, 427 F.Supp. 781.

■ Ohio may not discriminate by providing care to one recipient while it fails to provide care afforded to another recipient, as was the case in *DeLuca v. Hammons*, 927 F.Supp. 132, cited by Ash. However, Ash has not alleged, nor has he presented any evidence, that the cost cap on the MFWP has discriminated against a class of persons. The state is not charged with assuring that the needs of each eligible applicant are met in full, only in fulfilling the requirements of its own state plan. If we were to reverse the decision of the trial court and ODHS,

---

1. Although Ash alluded to numerous other persons who suffered a similar fate as Jeffrey due to the cost cap in his brief to the court of common pleas, Ash does not substantiate his claims with any empirical evidence.

we would essentially legislate a new cost system which has not been approved by the Ohio legislature, the ODHS, or the Secretary of Health and Human Services. We would defeat any limitation on any medically necessary service and require ODHS to pay for services beyond the state plan. *Curtis v. Taylor*, 625 F.2d 645.

Ohio's MFWP plan does not pay for services beyond the cost cap, which at the present time, is $9,000. Since Ash presented no evidence that the $9,000 cost cap fails to adequately meet the needs of most eligible individuals, the fact that others may bear substantial additional costs does not violate Section 1396a(a)(19), Title 42, U.S.Code. See *King v. Sullivan*, 776 F.Supp. 645; *Virginia Hosp. Assn.*, 427 F.Supp. 781.

Without a showing that the cost cap fails to meet the medical needs of most of the persons eligible for the MFWP, we cannot say that the common pleas court erred in affirming the decision of the ODHS, or that the ODHS's decision was arbitrary, capricious or not supported by reliable, probative an substantial evidence. Thus, we find that the trial court's decision is in accordance with federal law.

Accordingly, we overrule Ash's only assignment of error.

*Judgment affirmed.*

STEPHENSON, P.J., and PETER B. ABELE, J., concur.